Matter of Hart v Lonneville (2025 NY Slip Op 05365)

Matter of Hart v Lonneville

2025 NY Slip Op 05365

Decided on October 3, 2025

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on October 3, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., MONTOUR, GREENWOOD, NOWAK, AND KEANE, JJ.

645 CAF 24-00377

[*1]IN THE MATTER OF BRADLEY A. HART, PETITIONER-RESPONDENT,
v
STACY L. LONNEVILLE, RESPONDENT-APPELLANT. 

CHARLES J. GREENBERG, AMHERST, FOR RESPONDENT-APPELLANT.
KELLY M. CICCONE, ROCHESTER, ATTORNEY FOR THE CHILD. 

 Appeal from an order of the Family Court, Seneca County (Barry L. Porsch, J.), entered January 24, 2024, in a proceeding pursuant to Family Court Act article 6. The order, inter alia, granted petitioner sole legal custody and physical placement of the subject child. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.
Memorandum: In this Family Court Act article 6 proceeding, respondent mother appeals from an order that, as relevant here, granted petitioner father's petition to modify a prior custody order, awarded the father sole legal custody and physical placement of the child with visitation for the mother, and permitted the father to relocate the child from Seneca County to the State of Kentucky. We affirm.
Contrary to the mother's contention, we conclude that the determination to allow the father to relocate the child to Kentucky is supported by a sound and substantial basis in the record. "A parent seeking permission for a child to relocate with [them] has the burden of establishing by a preponderance of the evidence that the proposed relocation is in the child's best interests" (Matter of Murphy v Peace, 72 AD3d 1626, 1626 [4th Dept 2010]). "[E]ach relocation request must be considered on its own merits with due consideration of all the relevant facts and circumstances and with predominant emphasis being placed on what outcome is most likely to serve the best interests of the child" (Matter of Tropea v Tropea, 87 NY2d 727, 739 [1996]). The relevant factors to be considered include, but are not limited to, "[a] each parent's reasons for seeking or opposing the move, [b] the quality of the relationships between the child and the custodial and noncustodial parents, [c] the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, [d] the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and [e] the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements" (id. at 740-741). "[N]o single factor should be treated as dispositive or given such disproportionate weight as to predetermine the outcome" (id. at 738), and " 'a court's determination regarding custody . . . issues, based upon a first-hand assessment of the credibility of the witnesses after an evidentiary hearing, is entitled to great weight and will not be set aside unless it lacks an evidentiary basis in the record' " (Matter of Guillermo v Agramonte, 137 AD3d 1767, 1769 [4th Dept 2016]).
Here, we conclude that the record supports Family Court's determination that it is in the best interests of the child to allow the father to relocate the child to Kentucky. The record reflects that while living with the mother, the child resided in substandard housing for a prolonged period of time without the mother having any credible plans to remedy the situation. Indeed, the mother testified that she was residing with her boyfriend, the child, and another infant in a camper without a working toilet. Further, while living with the mother, the child did not have his own room and slept on a pull-out couch. Although the mother testified that she had [*2]funds saved toward a down payment for a home and hoped to purchase a home in the near future, the record supports the court's determination that the mother lacked a credible plan to improve her living situation, particularly where she had no reliable vehicle, had no working toilet in the camper, and could not explain why her boyfriend did not apply for unemployment benefits when he was not working in the winter.
The testimony further reflected that the father had a household income nearly five times that of the mother, and he recently purchased a new home where the child could have his own room (see generally Matter of Braga v Bell, 151 AD3d 1924, 1925-1926 [4th Dept 2017]; Matter of Thomas v Thomas, 79 AD3d 1829, 1830 [4th Dept 2010]). The father would also be able to enroll the child in sports and other activities after relocation to Kentucky, and the child would attend the elementary school that the father's oldest daughter—the child's step-sister—currently attends. The mother and the father were the only witnesses to testify, and the court's assessment of their credibility "is entitled to great weight" (Guillermo, 137 AD3d at 1769). On this record, and giving due deference to the court's credibility determinations, we cannot say that the court's determination lacked a sound and substantial basis in the record.
Entered: October 3, 2025
Ann Dillon Flynn
Clerk of the Court